UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TROPICAL MARKETING & CONSULTING,
LLC., and PAULA WOOD,

    Petitioners/Deponents,

v.                                                         Case No.  6:12-cv-1388-Orl-36TBS

GLOCK, INC.,

    Respondent/Deposer.

## ORDER

This case is before the Court on the Nonparties' Renewed Objections, Motion to Quash, and Motion for Protective Order Pertaining to Subpoenas Arising from Northern District of Georgia Case Glock, Inc. v. Global Guns & Hunting, Inc, 1:12-cv-0136-MHS (the "Primary Case"). (Doc. 3).

### I. Background

Respondent, Glock, Inc. ("Glock"), is the plaintiff and Global Guns & Hunting, Inc. d/b/a OMB Guns ("OMB Guns") is the defendant in the Primary Case currently pending in the Northern District of Georgia.  In the Primary Case, Glock alleges that from 2008 through 2010, OMB Guns was a distributor of firearms manufactured by Glock.  (Primary Case, Doc. 1 ¶ 30).  Those firearms were intended for resale to the Law Enforcement market ("LE Market") and the Commercial Market.  (Id.)  Glock sells firearms to the LE Market at lower prices than it sells firearms for the Commercial Market.  (Id. ¶¶ 17-18).  To keep the LE Market sales channel distinct from the Commercial Market sales channel, Glock utilizes different distributor agreements

which expressly prohibit its distributors from diverting firearms sold at lower LE Market prices to the higher priced Commercial Market.  (Id.¶ 29).  Glock alleges that OMB Guns breached its distributor agreements by diverting sales of firearms intended for the LE Market to the Commercial Market.  (Id. ¶ 62)  OMB Guns filed an answer and counterclaim alleging a breach of contract by Glock.  (Primary Case, Doc. 2).

Welcome "Bo" Wood ("Bo") served as Glock's Eastern Regional Manager from approximately February, 1996 until January 3, 2011.[1]  (Doc. 4 at 3).  Bo worked closely with OMB Guns.  Before filing the Primary Case, Glock's attorney questioned Bo regarding whether he was accepting payments from OMB Guns for special treatment, whether directly to him or funneled through his wife, Paula Wood ("Paula").  Bo denied accepting payments from OMB Guns and denied any knowledge about whether Paula was receiving payments from OMB Guns.  Glock's attorneys wrote to Paula, asking her to speak with them concerning these issues but she never responded.  Glock terminated Bo's employment on January 3, 2011.

During discovery in the Primary Case, OMB Guns produced 1099-Misc forms showing that it had made unexplained payments in excess of $250,000 to Paula and Tropical Marketing & Consulting, LLC ("Tropical") during calendar years 2008, 2009, and 2010.  The payments were made directly to Paula until approximately May 2009, when she organized Tropical, after which the payments were made to Tropical.  In

---

[1] Unless another source is indicated, the remaining facts in this Order are taken from Glock, Inc.'s Memorandum of Law in Opposition to Petitioners' Renewed Motion to Quash and for a Protective Order (Doc. 4), which is currently pending in the Middle District of Florida.

addition, Glock avers, on information and belief, that Paula was accepting payments from OMB Gun's predecessor, OMB Police Supply, from 2003 through 2007.

Glock issued and caused subpoenas to be served on Paula and Tropical commanding them to both produce documents and appear for the taking of their depositions. Glock's stated purpose is to obtain documents showing that Paula and Tropical were paid for services provided to OMB Guns, OMB Police Supply, OMB Express Police Supply and/or Express Police Supply (collectively "OMB") and/or John Ralph III, Robert Ralph and or John (Jack) Ralph (collectively "Ralph"), or whether the payments to Paula and Tropical were actually bribes being funneled to Bo.

The subpoenas were served on July 19, 2012, fifteen days prior to the requested production of documents. (Doc. 12 at 3-4). Due to financial difficulties, Paula and Tropical did not retain counsel until August 2, 2012. (Id. at 4) Their lawyer contacted Glock's attorneys who agreed to an extension through August 10, 2012 to respond to the subpoenas. (Id.) On August 3, 2012, Paula and Tropical filed their Nonparties' Objection, Motion to Quash and Motion for Protective Order Pertaining to Subpoenas Arising from Northern District of Georgia Case 1:12-cv-0136-MHS, Glock, Inc. v. Global Guns & Hunting, Inc., here, in the Middle District of Florida. (Doc. 1). Magistrate Judge Kelly denied the motion because it did not comply with Local Rule 3.01(g), which requires counsel to confer in good faith before most motions are filed. (Doc. 2). In his Order, Judge Kelly noted that the motion was filed after the production of documents by Paula and Tropical was due and directed them to "address when the subpoenas at issue were served and why the Motion was filed after the time for

-3-

production" if they elected to re-file their motion. (Id.) Pending before the Court is Paula and Tropical's re-filed motion in which they object to the subpoenas and ask that they be quashed or alternatively, that this Court issue a protective order. (Doc. 3).

## II.  Discussion

First, I note that Paula and Tropical have not complied with Judge Kelly's Order because they have not explained their failure to file their motion until after the time for production pursuant to the subpoenas.

As counsel know, the scope of discovery is broad. Federal Rule of Civil Procedure 26(b)(1) provides that: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Still, there are boundaries and the Court can limit discovery when it

> (i) . . . is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

Subpoenas issued to third parties are governed by Federal Rule of Civil Procedure 45. <u>See</u>, Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents . . ."). A third party can, as an alternative to complying with a Rule 45 subpoena, move the Court for a protective order pursuant to Fed. R. Civ. P. 26(c). Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." (<u>Id.</u>) A third party can also oppose a subpoena under Fed. R. Civ. P. 45(c)(2)(B) which provides that "[a] person commanded to produce documents or tangible things . . . may serve on the party or attorney designated in the subpoena a written objection . . ." The recipient of a non-party subpoena may also make a motion to quash or modify the subpoena. Fed. R. Civ. P. 45(c)(3)(A). The "issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." (<u>Id.</u>) The person asserting a privilege or protection against production must: "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A).

Paula and Tropical object to Glock's subpoenas on the ground that they are nothing more than a fishing expedition inasmuch as none of the information Glock seeks is relevant to the Primary Case. (Doc. 3 at 7). It appears that Glock has not alleged that any firearms passed through Paula or Tropical's hands and Glock has not

-5-

made a predicate showing that any money Paula or Tropical received came as a result of the conduct alleged in the Primary Case.  Still, Glock has shown why it has reason to think OMB Guns paid a substantial sum to Paula, Tropical and/or Bo during the period when Glock and OMB Guns were parties to distribution agreements.  While it remains to be seen what relevant, material information may result from this discovery, at this point, the alleged payment of bribes by OMB Guns to a Glock employee during the relevant time period in the Primary Case is certainly a matter within the scope of discovery.  Accordingly, this objection is OVERRULED.

Next, Paula and Tropical argue that the subpoenas are overly broad because they are not limited in time or scope to interactions with OMB or the handling of the firearms that are the subject of the Primary Case.  (Id. at 8).  The document subpoenas are limited to the period from January 1, 2003 to the present.  They are directed at discovering the relationships between Paula, Tropical and OMB; communications and financial matters involving OMB; and whether Tropical has any legitimate business purpose.  Thus, the subpoenas are not unlimited in time or scope and Paula and Tropical's objection on this ground is OVERRULED.

Third, Paula and Tropical allege that compliance with the subpoenas will subject then to undue burden and expense in that Paula and Bo are currently unemployed and Tropical is not producing income.  (Id. at 8-9).  The burden is on Paula and Tropical to show that compliance with these subpoenas will be unduly burdensome.  Fadalla v. Life Automotive Products, Inc., 258 F.R.D. 501, 504 (M.D. Fla. 2007) (The burden of showing that compliance with the subpoenas would impose

an undue burden rests with the party moving to quash).  They have not explained why responding to the subpoenas will be unduly burdensome, what exactly, the burden will be, or how their current lack of income makes responding to the subpoenas unduly burdensome.  They have also not submitted affidavits or other proof to support this assertion.  Accordingly, Paula and Tropical have not met their burden and this objection is OVERRULED.

Paula and Tropical object on the ground that many of the subpoenaed documents can be obtained from OMB or are already in the possession of Glock and its attorneys.  (Doc. 3 at 9).  Assuming this is true, it does not eliminate the possibility that Paula or Tropical's possession or lack of possession of certain documents may be significant.   It also does not address the possibility that Paula or Tropical are in possession of non-identical copies of documents.  Therefore, this objection is OVERRULED.

Both Paula and Tropical contend that their financial information is private and confidential.  (Id. at 10).  The Court agrees to the extent that Glock is seeking income tax returns, bank statements, W-2 forms, 1099 forms, employment contracts and pay stubs (collectively the "Financial Information").  Accordingly, while this objection is OVERRULED, the Court will enter a protective order to safeguard against the improper use and dissemination of the Financial Information.

Paula has raised the husband-wife privilege to prevent the disclosure of her communications with Bo.  Because the Court's jurisdiction is based upon diversity of citizenship (Primary Case, Doc 1 ¶ 3), Florida law determines whether the husband-

wife privilege protects these communications. Fed. R. Evid. 501. The husband-wife privilege is codified in § 90.504 Florida Statutes. Lynch v. State, 2 So. 3d 47, 63 (Fla. 2008). The Florida Supreme Court has explained that: "communications between husband and wife made in the course of their marriage relationship and while they are married and living together are privileged and may not be disclosed by one without the consent of the other party." Brown v. May, 76 So. 2d 652, 653 (Fla. 1954). Strong public policy supports the privilege and "marital communications are presumed confidential absent evidence to the contrary." Yokie v. State of Florida, 773 So. 2d 115, 117 (Fla. 4th DCA 2000). For the privilege to apply, spouses must have a "reasonable expectation of privacy" in the communication in question. Boyd v. State, 17 So. 3d 812, 817 (Fla. 4th DCA 2009). Among the factors the Court considers in determining whether spouses have a reasonable expectation of privacy are "the nature of the message and the circumstances under which it was delivered." Hanger Orthopedic Group, Inc. v. McMurray, 181 F.R.D. 525, 530 (M.D. Fla. 1998). There is no exception to the husband-wife privilege in Florida for communications made in furtherance of a crime. Id. at 529.

The only argument Glock makes in opposition to Paula's assertion of the privilege is that it has been waived because Paula has not produced a privilege log. This argument fails because the obligation to supply a privilege log only applies to parties to the lawsuit. Spitznagel v. R&D Italia, LLC, No. 2:09-cv-824-FtM-29SPC, 2011 WL 940052 *4 (M.D. Fla. Mar. 17, 2011); Chicago Ins. Co v. Health Care Indem., No. 3:09-cv-00659, 2010 WL 3123149 *5 (S.D.W. Va. Aug. 6, 2010). Glock's

-8-

argument also fails because the privilege belongs to both Paula and Bo and Paula cannot waive it without Bo's consent. <u>Brown</u>, 76 So. 2d at 653. The Court finds that the husband-wife privilege has not been waived and Paula may properly assert it when and where it is applicable.

Paula has also invoked her Fifth Amendment privilege against self-incrimination in response to Glock's attempt to obtain certain categories of documents. Glock contends that Paula has not properly asserted the privilege and that it is generally not applicable to the production of documents. The Fifth Amendment shields both the innocent and the guilty from compulsory self-incrimination. <u>Marchetti v. United States</u>, 390 U.S. 39, 51 (1968). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary hazards of incrimination." <u>Id.</u> at 53.

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating and compelled." <u>Hiibel v. Sixth Judicial Dist. Court of Nevada</u>, 542 U.S. 177, 189 (2004) (citing <u>United States v. Hubbell</u>, 530 U.S. 27, 34-38, (2000)). A person cannot avoid complying with a subpoena simply because a document contains incriminating information if the creation of the document was not compelled within the meaning of the privilege. <u>Hubbell</u>, 530 U.S. at 36 (citing <u>Fisher v. United States</u>, 425 U.S. 391 (1976)). The fact that a person is in possession of the document is irrelevant to whether its creation was compelled. <u>Id.</u> at 36 n.18 (quoting <u>United States v. Doe</u>, 465 U.S. 605, 612 (1984)). "[T]he contents of business records

ordinarily are not privileged because they are created voluntarily and without compulsion.  Doe, 465 U.S. at 608-09.

Although a person may not avoid the production of documents which contain incriminating information, the Supreme Court recognizes that "the act of production itself may implicitly communicate statements of fact.  By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic." Hubbell, 530 U.S. at 36 (internal quotations omitted).

The blanket assertion of the privilege is not valid.  United States v. Goodwin, 625 F. 2d 693, 701 (5th Cir. 1980); SEC v. Aquacell Batteries, Inc., No. 6:07-cv-608-Orl-22DAB, 2007 WL 2274466 *2 (M.D. Fla. Aug. 6, 2007).  It is the Court's job to evaluate a person's claim of incrimination and determine whether it is reasonable.  Goodwin, 625 F.2d at 701.  "The first step in making any such evaluation, in the context of production of documents, is to identify what documents are sought and, to the greatest extent possible without vitiating the privilege, what documents are being withheld, allegedly due to the assertion of the privilege." Aquacell Batteries, 2007 WL 2274466, at *2.  "A court must make a particularized inquiry, deciding in connection with each specific area that the questioning party wishes to explore, whether or note the privilege is well founded." United States v. Melchor Moreno, 536 F.2d 1042, 1049 (5th Cir. 1976).

The Court cannot evaluate the propriety of Paula's invocation of the husband-wife and Fifth Amendment privileges because she has not complied with Rule 45(d)(2)(A).  Therefore, the parties are ORDERED to confer as to each document request and each specific assertion of privilege.  Glock must specify more particularly the documents it wants produced.  Paula must then either acknowledge the existence of the documents and her possession or control over them, deny the existence of the documents and/or her possession or control of them, or assert the Fifth Amendment privilege with respect to why she cannot either confirm or deny the existence and/or her possession or control of the documents.  If the existence, possession or control of a document itself is not being claimed as privileged, Paula must then acknowledge same, and either produce the document or assert the privilege and be prepared to establish for the Court why the production of the document is privileged. Once the parties have exhausted this process and the privilege is asserted more narrowly, the Court may then be in a position to evaluate each particular claim of privilege through an in camera proceeding.

The Financial Information produced by Paula and Tropical shall be used solely to litigate the Primary Case and for no other purpose.  The Financial Information shall not be disclosed except: (1) to counsel and their support staff; (2) witnesses as part of the discovery process and in preparation for hearings and trial; (3) the Court; and (4) during depositions, hearings and trial.  Upon the conclusion of the Primary Case, the Financial Information shall be returned to Paula and Tropical or destroyed.  Except for the Court, no person who receives Financial Information pursuant to this Order shall

retain it for any purpose.  The Court in the Primary Case may amend or terminate this protective order at any time.

Finally, Paula and Tropical are concerned that Paula's deposition, both in her individual and corporate capacities, will not be narrowly and appropriately tailored, will be a fishing expedition, and will seek extensive information not reasonably calculated to lead to the discovery of information that is relevant to the Primary Case.  The Court will not enter a prospective order based upon speculation about what might occur during the depositions.  However, the Court expects the parties to be guided by the rulings in this Order.

IT IS SO ORDERED.

DONE AND ORDERED in Orlando, Florida, on November 7, 2012.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel